UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **PATRICIA BURNELLE, MIHO SAKAI**, and **JUDY KISLING** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**SAGE HOME LOANS CORPORATION** f/k/a **LENOX FINANCIAL MORTGAGE CORPORATION** d/b/a **WESLEND FINANCIAL**,<br><br>Defendant. | Case No. 0:24-cv-00972-MGL |

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

## I.    INTRODUCTION

Plaintiffs Patricia Burnelle, Miho Sakai, and Judy Kisling ("Plaintiffs"), on behalf of themselves and all others similarly situated, hereby respectfully request that the Court grant preliminary approval of the parties' proposed class action settlement in this matter under Federal Rule of Civil Procedure 23. This case arises out of a data incident (the "Data Incident"), discovered by Defendant on December 19, 2023, where cybercriminals allegedly accessed Personal Information ("PI") of the customers of Defendant Sage Home Loans Corporation f/k/a Lenox Financial Mortgage Corporation d/b/a Weslend Financial ("Defendant" or "SHLC"). After lengthy arm's-length negotiations, Plaintiffs and SHLC reached the Settlement Agreement (the "Settlement" or "S.A.") attached hereto as **Exhibit A**.

1

The Settlement provides timely and excellent benefits to the Settlement Class.[1] Under the Settlement, SHLC will establish a non-reversionary Settlement Fund of $925,000.00 from which Settlement Class Members are eligible to recover compensation up to $1,500.00 for ordinary out-of-pocket expenses, up to $125.00 for lost time (at $25.00 per hour for up to five hours), or an alternative cash payment of $50.00. Notably, these cash payments will be subject to a *pro rata* increase if the value of valid claims does not exhaust the entire Settlement Fund. Similarly, if the value of valid claims exhausts the entire Settlement Fund, then payments will be subject to a *pro rata* decrease. The Settlement Fund will also be used to pay for attorneys' fees and costs, Class Representatives' service awards, and all costs of notice and claims administration.

Additionally, SHLC already provided Class Counsel with a "Security Attestation" attesting to the security measures it has implemented, or is in the process of implementing, following the Data Incident. The costs of any such security measures on the part of SHLC shall be fully borne by SHLC, and under no circumstances will such costs be deducted from the Settlement Fund. As explained below, the Settlement provides the relief sought in the Complaint filed by Plaintiffs and readily satisfies the preliminary approval standard—it is likely to be approved as fair, reasonable, and adequate.

Plaintiffs respectfully move this Court for entry of an Order to: (1) preliminarily approve the terms of the Settlement as being within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class for settlement purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notices of the Settlement; (4) approve the Claim Form and Claim submission process; (5) approve the procedures for Settlement Class members to opt-out of the Settlement or for Settlement Class Members to object

---

[1] Capitalized terms herein have the same meaning as in the Settlement Agreement.

2

to the Settlement; (6) appoint Gary Klinger and David Lietz of Milberg Coleman Bryson Phillips Grossman PLLC as Class Counsel for Settlement purposes; (7) appoint Kroll Settlement Administration, LLC as Settlement Administrator; (8) appoint Patricia Burnelle, Miho Sakai, and Judy Kisling as Representatives of the Class; (9) stay the Action pending Final Approval of the Settlement; and (10) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, the Parties, Class Counsel, and SHLC's Counsel.

The Court should preliminarily approve the proposed Settlement because it is a fair, reasonable, and adequate compromise of genuinely contested claims. Moreover, the Settlement will provide the Settlement Class Members with substantial relief—that precisely addresses the harms inflicted by the Data Incident—without the risk of delay from protracted litigation. The terms of the Settlement are fair, reasonable, and consistent with precedent concerning class settlements in this Circuit and elsewhere. Thus, this Court should grant Plaintiffs' motion and allow notice to be provided to the Settlement Class.

## II.     STATEMENT OF FACTS

### A. Background

Lenox Financial Mortgage Corporation d/b/a Weslend Financial ("Lenox") was acquired and changed its name to Sage Home Loans Corporation (SHLC) on November 30, 2023.  On or about December 19, 2023, SHLC noticed suspicious activity on the Lenox legacy network (the "Data Incident"). At the time of the incident, SHLC had approximately 135,000 customers, who had provided personal information – including but not limited to full names, addresses, Social Security numbers, driver's license numbers, loan numbers and financial information -- in the course of obtaining a mortgage.  After investigating the Data Incident, in accordance with various state data breach notification rules, SHLC notified the approximately 29,004 individuals,

consisting of approximately 28,018 customers and 986 current and former employees and beneficiaries.

### B.  Procedural History

Following Defendant's notification, Plaintiff Patricia Burnelle filed this class action lawsuit against Defendant in this Court on February 26, 2024, and asserted claims for (1) negligence; (2) negligence *per se*; (3) breach of implied contract; and (4) unjust enrichment. *See* ECF 1. Subsequently, SHLC was named as a defendant in two putative class actions filed in the Central District of California and one in California Superior Court, Orange County (the "Related Actions"). S.A. ¶ 5. The Related Actions are materially and substantively identical, as they have overlapping claims, seek to represent the same putative class members, and arise out of the same Data Incident.

Thereafter, the Parties began discussing the possibility of early resolution of the asserted claims. *Id*. ¶ 6. After lengthy arms-length negotiations, the Parties reached agreement on the materials terms of the settlement on June 6, 2024. *Id*. In the weeks that followed, the Parties diligently negotiated and circulated drafts of the Settlement Agreement, along with accompanying notices, a Claim Form, and other exhibits, and agreed upon a Claims Administrator. Declaration of Gary Klinger ("Klinger Decl."), ¶ 9. The Settlement Agreement was finalized and executed on October 10, 2024. *Id*. ¶ 10.

## III.    SETTLEMENT TERMS

### A.  The Settlement Class

The Settlement provides for the certification of a Settlement Class defined as: all living individuals residing in the United States whose Personal Information may have been impacted in the Data Incident. S.A. ¶ 55. The Settlement Class comprises all of the approximately 135,000

borrowers for whom SHLC had personal information at the time of the incident, and a limited number of other individuals who SHLC notified about the incident. All members of the Settlement Class who do not opt-out of the settlement shall be referred to as Settlement Class Members. *Id*. ¶ 56. Excluded from the Settlement Class are: (a) all persons who are directors, officers, and agents of SHLC; (b) governmental entities; and (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff. *Id*. ¶ 55./'

### B.  Settlement Benefits

The Settlement provides Class Members with timely benefits targeted at remediating the specific harms they have suffered because of the Data Incident. Klinger Decl. ¶¶ 14–15. Notably, the Settlement establishes a non-reversionary common fund of nine-hundred and twenty-five thousand dollars ($925,000.00) which will be paid by, or on behalf of, SHLC. S.A. ¶ 58. The Settlement provides the following benefits to all Class Members who submit a valid claim—and do not timely and validly opt-out of participation:

*Cash Payments*. The Settlement Fund will provide compensation for unreimbursed ordinary losses fairly traceable to the Data Incident up to $1,500.00 per person. *Id*. ¶ 67. Additionally, Class Members are eligible to receive up to $125.00 per person for time spent remedying issues related to the Data Incident (at a rate of $25.00 per hour for up to five hours). *Id*. Alternatively, Class Members can elect to receive a one-time payment of $50.00. *Id*. Furthermore, valid claims for cash payments will be increased *pro rata* if the value of valid claims does not exhaust the entire Net Settlement Fund. *Id*. ¶ 66.

*Injunctive Relief*. In addition to providing monetary relief, SHLC has already implemented the data security improvements sought by Plaintiffs. SHLC already provided Class Counsel with a "Security Attestation" attesting to the security measures it is implementing following the Data

Incident. *Id.* ¶ 68. And SHLC confirms that all such security measures have been implemented. *Id*. Critically, the costs of such security measures on the part of SHLC shall be fully borne by SHLC, and under no circumstances will such costs be deducted from the Settlement Fund. *Id*.

### C. Settlement Administration

The Parties agreed that Kroll Settlement Administration, LLC will serve as the Settlement Administrator to process all claims, subject to approval by the Court. *Id.* ¶ 71. Notice and Administration Expenses will be paid through and using the Settlement Fund. *Id*. ¶¶ 33, 61–63. The Settlement Administrator will establish and administer a Settlement Website which will be publicly viewable and contain information about the Settlement, including but not limited to, copies of the Amended Complaint filed in this matter, a copy of the Long Form Notice, Postcard Notice, FAQs, Claim Form that may be submitted online through the Settlement Website or mailed to the Settlement Administrator, and the deadlines for filing Claim, Objection and Exclusion requests, and the date of the Final Approval Hearing. *Id*. ¶¶ 59, 76, 83.

The Settlement Administrator will provide compensation (as detailed *supra*) to Class Members who submit valid and timely claim forms from the Settlement Fund. *Id*. ¶¶ 72–73. Such compensation will be provided via mailed check or electronic payment. *Id*. ¶ 94. Claim Forms may be submitted online through the Settlement Website or through U.S. Mail. *Id*. ¶ 84. If a Claim Form is rejected for containing incomplete or inaccurate information, or omitting required information, the Settlement Administrator may send a Notice of Deficiency to the Claimant explaining what information is missing or inaccurate and needed to validate the Claim. *Id*. ¶ 88. Thereafter, the Claimant will have until the Claim Form Deadline, or 15 days from the date the Notice of Deficiency is sent (whichever is later) to reply to the Notice of Deficiency and provide the required information. *Id*.

### D. Notice to Class Members

Within five (5) days after the entry of the Preliminary Approval Order, SHLC shall provide the Class List to the Settlement Administrator. *Id*. ¶ 75. Notice will be provided via both: (1) direct notice, and (2) notice on the Settlement Website. *Id*. ¶¶ 75–77. Within forty-five (45) days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program. *Id*. ¶ 75. Where email addresses are provided by SHLC for Settlement Class members, Email Notice shall be sent by email. *Id*. Settlement Class members for which email addresses are not provided, or emails are undelivered (and a postal address is provided by SHLC), shall receive a Postcard Notice by mail. *Id*. Furthermore, the Settlement Administrator shall establish the Settlement Website no later than the day before the Notice Program begins. *Id*. ¶ 77.

### E. Opt-Outs

Class Members may opt-out from receiving the benefits of the Settlement. *Id*. ¶ 78. The Long Form Notice also shall include a procedure for Settlement Class members to opt-out of the Settlement Class, and the Postcard Notice shall direct Settlement Class members to review the Long Form Notice to obtain the opt-out instructions. *Id*. A Settlement Class member may opt-out of the Settlement Class at any time during the Opt-Out Period by mailing a request to opt-out to the Settlement Administrator postmarked no later than the last day of the Opt-Out Period. *Id*. The opt-out request must be personally signed by the Settlement Class member and contain the requestor's name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class. *Id*. The Parties recommend to the Court that the Opt-Out Period shall begin the day after the earliest day on which the Notice is first distributed, and that ends no later than 30 days before the Final Approval Hearing. *Id*. ¶ 38.

### F. Objections

Class Members may object to the Settlement or Fee Application by submitting written objections to the Court. *Id*. ¶ 79. For an objection to be considered by the Court, the relevant Settlement Class Member must submit the objection no later than the last day of the Objection Period, as specified in the Notice, and the relevant Settlement Class Member must not have excluded themselves from the Settlement Class. *Id*. The Parties recommend to the Court that the Objection Period shall begin the day after the earliest day on which the Notice is first distributed, and end no later than 30 days before the Final Approval Hearing. *Id*. ¶ 37.

For an objection to be valid, it must set forth: (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (c) the number of times the objector has objected to a class action settlement within the five (5) years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; and (d) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or Application for Attorneys' Fees, Costs, and Service Awards. *Id*. ¶ 80.

Additionally, the objection must set forth: (e) the number of times in which the objector's counsel or counsel's law firm have objected to a class action settlement within the five (5) years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel or counsel's law firm have objected to a class action settlement within

the preceding 5 years; (f) whether objector's counsel will appear at the Final Approval Hearing; (g) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (h) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (i) the objector's signature. *Id*.

### G. Attorneys' Fees and Service Awards

The Parties did not discuss or negotiate fees or service awards until they agreed on the terms benefiting the Class. *Id*. ¶ 99; Klinger Decl. ¶ 8. In so doing, the Parties avoided conflict with the Class's interests, thereby fulfilling their responsibilities to the Class. Klinger Decl. ¶ 8. Thus, Class Counsel will file a Fee and Expense Application for an award of attorneys' fees to be paid from the Settlement Fund not to exceed 33.33% of the Settlement Fund, plus reimbursement of reasonable costs. *Id*. ¶ 98. Notably, the Settlement is not contingent on approval of the request for attorneys' fees and costs or Service Awards, and if the Court denies the request or grants amounts less than what was requested, the remaining provisions of the Agreement shall remain in force. *Id*. ¶ 99. Separately, Class Counsel will request Service Awards of up to $5,000.00 for each Class Representative. *Id*. ¶ 97. Such Service Awards, if approved by the Court, shall be payable out of the Settlement Fund. *Id*.

### H. Release of Claims

The Parties tailored the release to affect only those claims related to the Data Incident—defined as "Released Claims" in the Settlement Agreement. *Id*. ¶ 49. Thus, any Class Members, who do not exclude themselves, will release their claims against Defendant related to the Data Incident. *Id*. ¶¶ 101–03.

## IV.    ARGUMENT

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583, 2016 U.S. Dist. LEXIS 187745, at *14 (D.S.C. May 26, 2016) (internal quotation omitted). After all, such settlements "conserve scarce resources that would otherwise be devoted to protracted litigation." *Robinson v. Carolina First Bank NA*, No. 7:18-cv-02927, 2019 U.S. Dist. LEXIS 26450, at *21 (D.S.C. Feb. 14, 2019) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991)). Thus, there is a "'strong initial presumption' in class action cases 'that the compromise is fair and reasonable.'" *Id*. (quoting *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001)); *see also In re Allura Fiber Cement Siding Litig.*, Civil Action No. 2:19-mn-02886, 2021 U.S. Dist. LEXIS 96931, at *6 (D.S.C. May 21, 2021) (noting the "the general judicial policy favoring settlement").

Under Rule 23(e), a class action may be settled "after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). And "[a]lthough Rule 23(e) does not delineate a procedure for court approval of settlements of class actions, the courts generally have followed a two-step procedure." *Reed*, 2016 U.S. Dist. LEXIS 187745, at *15. **First**, at the preliminary approval stage, "the court conducts a preliminary approval or pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval' or, in other words, whether there is 'probable cause' to notify the class of the proposed settlement." *Id*. (internal quotation omitted). **Second**, at the final approval stage, "[if] the court grants preliminary approval and notice is sent to the class, the court conducts a 'fairness' hearing at which all interested parties are afforded an opportunity to be heard on the proposed settlement." *Id*.

Ultimately, "[t]he driving concern of the Court's fairness inquiry is whether the proposed settlement 'was reached as a result of good-faith bargaining at arm's length, without collusion[.]'"

*Robinson*, 2019 U.S. Dist. LEXIS 26450, at *22 (quoting *In re Jiffy Lube*, 927 F.2d at 159 (4th Cir. 1991)). Thus, "federal courts should give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for the affected parties and . . . promote judicial efficiency." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. MDL No. 2:18-mn-2873, 2021 U.S. Dist. LEXIS 16470, at *7 (D.S.C. Jan. 25, 2021) (quoting *Gunnells v. Healthplan Servs., Inc*., 348 F.3d 417, 424 (4th Cir. 2003)).

### A. Preliminary Approval of the Settlement is Warranted.

"Preliminary approval of a class action settlement should be granted when the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or of segments of the class or excessive compensation for attorneys and appears to fall within the range of possible approval." *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *20 (quoting *Temp. Servs. v. Am. Int'l Grp., Inc*., No. 3:08-cv-00271, 2012 U.S. Dist. LEXIS 199143, at *14 (D.S.C. July 31, 2012)). In other words, "[t]he purpose of the preliminary approval is for the court to determine that the proposed settlement agreement is 'sufficiently within the range of reasonableness.'" *Id*. at *21 (quoting *In re Outer Banks Power Outage Litig*., No. 4:17-CV-141, 2018 U.S. Dist. LEXIS 73795, at *9 (E.D.N.C. May 2, 2018)). Thus, "the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase." William B. Rubenstein, *Newberg on Class Actions* § 13:13 (5th ed. 2011).

At the preliminary approval stage, the court's review effectively consists of three steps. ***First***, the court must determine if the proposed settlement satisfies the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. *Robinson*, 2019 U.S. Dist. LEXIS

26450, at *9. **Second**, for class actions brought under Rule 23(b)(3), the court must determine if the proposed settlement satisfies the two requirements of Rule 23(b)(3): predominance and superiority. *Id*. **Third**, the court must determine if the proposed settlement is "fair, adequate, and reasonable[.]" *Id*. at *20. As detailed below, this inquiry includes the consideration of numerous factors.

Here, the proposed settlement satisfies Rule 23(a), 23(b)(3), and is fair, adequate, and reasonable. In fact, the proposed settlement aligns with substantially similar data breach settlements within the Fourth Circuit which received ***final*** approval. *See e.g., In re Capital One Consumer Data Sec. Breach Litig*., No. 1:19-md-2915, 2022 U.S. Dist. LEXIS 234943, at *13 (E.D. Va. Sep. 13, 2022) (granting final approval in a data breach class action); *Brent v. Advanced Med. Mgmt., LLC*, No. JKB-23-3254, 2024 U.S. Dist. LEXIS 112172, at *2 (D. Md. June 25, 2024) (same); *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, No. JKB-16-3025, 2019 U.S. Dist. LEXIS 120558, at *20 (D. Md. July 15, 2019) (same); *Abubaker v. Dominion Dental United States*, Civil Action No. 1:19-cv-01050, 2021 U.S. Dist. LEXIS 252202, at *6 (E.D. Va. Nov. 19, 2021) (same). Thus, the Court should grant preliminary approval.

### B. The Settlement Class Meets the Requirements of Rule 23(a).

The proposed settlement satisfies the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997). Additionally, in the Fourth Circuit, "Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" *In re Aqueous*, 2021 U.S. Dist. LEXIS 16470, at *7 (quoting *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)). Still, when considering a request for settlement-only class certification, the court need not consider trial manageability. *Amchem*, 521 U.S. at 620.

### 1.  The Class is sufficiently numerous.

Numerosity requires that the class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Generally, a putative class of over forty members is sufficient to satisfy numerosity. *See e.g., Williams v. Henderson*, 129 Fed. App'x 806, 811 (4th Cir. 2005) (indicating that a class with over 30 members justifies a class); *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 16470, at *10 (finding numerosity satisfied when the "proposed class consist[ed] of approximately 300 households . . . each of approximately three to four residents). Here, there are approximately 27,746 Settlement Class Members. S.A. ¶ 3. Thus, numerosity is readily met.

### 2.  Questions of law and fact are common to the Class.

Commonality requires that there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). This requires that Class Members "suffered the same injury" such "that all their claims can productively be litigated at once." *Wal-Mart Stores, Inc*, 564 U.S. at 350. In other words, the determination of common questions must "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Notably, even "[a] single common question will suffice, but it must be of such a nature that its determination will resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Aqueous*, 2021 U.S. Dist. LEXIS 16470, at *11 (quoting *Adair*, 764 F.3d at 360). And this Court has held that commonality is satisfied when "common allegations raise common answers likely relevant to resolving the claims[.]" *Id*. Thus, in the settlement context, "[t]he commonality requirement . . . is 'not usually a contentious one: the requirement is generally satisfied by the existence of a single issue of law or fact that is common across all class members and thus is easily met in most cases.'" *Comm'rs of Pub. Works*

*v. Costco Wholesale Corp.*, 340 F.R.D. 242, 247 (D.S.C. 2021) (quoting 1 Newberg on Class Actions § 3:18 (5th ed.)).

Here, Plaintiffs and Class Members all have common questions of law and fact arising out of the same common event: the Data Incident discovered by Defendant on December 19, 2023. S.A. ¶ 2. Commonality is readily satisfied in data breach class actions like this. *See e.g., In re Capital One*, 2022 U.S. Dist. LEXIS 234943, at *14 ("Here, all Settlement Class Members suffered the same alleged injury from the same conduct—exposure of their personal data in the Data Breach—and are asserting the same legal claims. Accordingly, common questions of law and fact abound."); *Advanced Med. Mgmt., LLC*, 2024 U.S. Dist. LEXIS 112172, at *8 (same); *Nat'l Bd. of Exam'rs in Optometry, Inc.*, 2019 U.S. Dist. LEXIS 120558, at *11 (same); *Dominion Dental United States*, 2021 U.S. Dist. LEXIS 252202, at *7–8 (same); *In re Novant Health, Inc.*, 2024 U.S. Dist. LEXIS 107949, at *10–11 (same).

Furthermore, Plaintiffs alleged, *inter alia*, the following questions of law and fact that are common to the class: whether and to what extent Defendant had a duty to protect the PI of Plaintiffs and Class Members; whether Defendant had respective duties not to disclose the PI of Plaintiffs and Class Members to unauthorized third parties; whether Defendant failed to adequately safeguard the PI of Plaintiffs and Class Members; and whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach. (ECF 23, ¶ 180). Thus, commonality is readily satisfied.

### 3. Plaintiffs' claims and defenses are typical.

Typicality requires that the claims or defenses of the class representative must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). In other words, "a class

representative must be part of the class and possess the same interest and suffer the same injury as the class members." *In re Aqueous*, 2021 U.S. Dist. LEXIS 16470, at *11 (quoting *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001)). Thus, typicality exists "if a plaintiff's claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Id.* (quoting *Parker v. Asbestos Processing, LLC*, No. 0:11-cv-01800, 2015 U.S. Dist. LEXIS 1765, at *20 (D.S.C. Jan. 8, 2015)). Critically, "individual damages calculations do not destroy typicality because 'Rule 23 explicitly envisions class actions with [] individualized damage determinations.'" *Id.* (quoting *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 428 (4th Cir. 2003)).

For example, in *In re Aqueous*, this Court found typicality satisfied because "the proposed class representatives' claims arise from the same alleged exposure . . . during [the] same time period as do the putative members' claims." *Id.* at *12. Here, typicality is likewise satisfied because Plaintiffs' and Class Members' claims all arise from the same exposure of PI during the Data Incident. (ECF 23, ¶¶ 28-35). And Plaintiffs and Class Members all share similar claims which derive from the same theories (e.g., negligence). *See id.* ¶¶ 191-328.

Typicality is also readily satisfied in data breach class actions like this. *See e.g., In re Capital One*, 2022 U.S. Dist. LEXIS 234943, at *14–15 (granting final approval and finding typicality satisfied); *Advanced Med. Mgmt., LLC*, 2024 U.S. Dist. LEXIS 112172, at *9–10 (same); *Nat'l Bd. of Exam'rs in Optometry, Inc.*, 2019 U.S. Dist. LEXIS 120558, at *11–12 (same); *Dominion Dental United States*, 2021 U.S. Dist. LEXIS 252202, at *8–9 (same); *In re Novant Health, Inc.*, 2024 U.S. Dist. LEXIS 107949, at *11 (same). Thus, typicality is met.

### 4. Plaintiffs will provide fair and adequate representation.

Adequacy requires that the class representative and their counsel must adequately protect the class's interests. Fed. R. Civ. P. 23(a)(4). This requirement "serves to uncover conflicts of interest between named Parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. The court conducts "a two-pronged inquiry, requiring evaluation of: (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether Plaintiffs' claims are sufficiently interrelated with and not antagonistic to the class claims as to ensure fair and adequate representation." *In re Aqueous*, 2021 U.S. Dist. LEXIS 16470, at *12 (quoting *Lott v. Westinghouse Savannah River Co*., 200 F.R.D. 539, 561 (D.S.C. 2000)).

For example, in *In re Aqueous*, adequacy was satisfied because (1) "class counsel . . . demonstrated sufficient qualification, experience and commitment" and (2) "the causes of action brought in the complaint encompass the types of injuries provided for in the [settlement agreement] and, therefore, are interrelated to the class claims." *Id*. at *12–13. Similarly, in *Costco*, adequacy was satisfied because (1) class counsel had "extensive experience in in class actions" and (2) plaintiff "suffered the same or similar harms as absent class members." 340 F.R.D. 242, 248. Like *In re Aqueous* and *Costco*, adequacy is met here because (1) Class Representatives have retained qualified counsel with broad experience in data breach class actions, and (2) Class Representatives share common interests with the class stemming from the exact same Data Incident. Klinger Decl. ¶¶ 13, 18, 21.

Adequacy is met in data breach class actions when class counsel is experienced in data breach litigation. *See e.g., In re Capital One*, 2022 U.S. Dist. LEXIS 234943, at *15–16 (noting that plaintiffs "retained lawyers who the Court has already recognized are abundantly qualified and experienced, thus satisfying the adequacy requirement"); *Advanced Med. Mgmt., LLC*, 2024 U.S. Dist. LEXIS 112172, at *10–11 (same); *Nat'l Bd. of Exam'rs in Optometry, Inc.*, 2019 U.S.

Dist. LEXIS 120558, at *12 (same); *Dominion Dental United States*, 2021 U.S. Dist. LEXIS 252202, at *9 (same); *In re Novant Health, Inc*., 2024 U.S. Dist. LEXIS 107949, at *12–14 (same). Thus, adequacy is satisfied.

### 5.  Class Members are readily identifiable.

The "readily identifiable" standard is satisfied when class members can be identified "in reference to objective criteria." *In re Aqueous*, 2021 U.S. Dist. LEXIS 16470, at *8 (quoting *Adair*, 764 F.3d at 358 (4th Cir. 2014). Still, "plaintiffs need not be able to identify every class member at the time of certification[.]" *Id*. And approval is proper when "the 'practical issue of identifying class members' is not 'overly problematic' such that 'administrative burdens of certification may outweigh the efficiencies expected in a class action.'" *Id*. (quoting *Cuming v. S.C. Lottery Comm'n*, Civil Action No. 3:05-cv-03608, 2008 U.S. Dist. LEXIS 26917, at *5 (D.S.C. Mar. 28, 2008)).

Notably, identifiability is readily satisfied in data breach class actions like this. *See e.g., In re Novant Health, Inc*., 2024 U.S. Dist. LEXIS 107949, at *8–9 (finding that the class was "readily identifiable" because defendant already "identified and contacted all potential class members" and "provided the Settlement Administrator with the names and contact information for all class members"). Here, Defendant already "notified approximately 27,746 individuals that their PI may have been impacted by the Data Incident." S.A. ¶ 3. Furthermore, the Settlement Agreement requires that Defendant provide the Settlement Administrator with a "class list" of all Class Members—including "Settlement Class members' names, postal address (if available from Data Incident notice materials) and email address (if available from Data Incident notice materials)." *Id*. ¶ 17. Thus, identifiability is satisfied.

### C.  The Settlement Class Meets the Requirements of Rule 23(b)(3).

The proposed settlement satisfies the two requirements of Rule 23(a): predominance and superiority. *Robinson*, 2019 U.S. Dist. LEXIS 26450, at \*14.

### 1. Common questions of law and fact predominate.

Predominance requires that "questions of law or fact common to class members [must] predominate over any questions affecting only individual members[.]" *Robinson*, 2019 U.S. Dist. LEXIS 26450, at \*14 (quoting Fed. R. Civ. P. 23(b)(3)). This requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id*. (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). Notably, the Supreme Court is clear that predominance "does ***not*** require" a plaintiff to "show that the elements of [their] claim are susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Tr. Fun*ds, 568 U.S. 455, 469 (2013) (emphasis in original). Rather, predominance merely requires "that common questions ***predominate*** over any questions affecting only individual [class] members." *Id*. (emphasis in original) (internal quotation omitted).

Predominance is readily satisfied in data breach class actions like this because "many common questions of fact and law [] arise from [an] alleged data breach and [d]efendant's alleged conduct predominate[s] over any individualized issues." *Dominion Dental United States*, 2021 U.S. Dist. LEXIS 252202, at \*9–10; *see also In re Capital One*, 2022 U.S. Dist. LEXIS 234943, at \*16–17 ("The focus on a defendant's security measures in a data breach class action 'is the precise type of predominant question that makes class-wide adjudication worthwhile.'"); *Advanced Med. Mgmt., LLC*, 2024 U.S. Dist. LEXIS 112172, at \*11–12 (same); *Nat'l Bd. of Exam'rs in Optometry, Inc.*, 2019 U.S. Dist. LEXIS 120558, at \*12–13 (same); *In re Novant Health, Inc*., 2024 U.S. Dist. LEXIS 107949, at \*14–15 (same).

Predominance is satisfied here. Plaintiffs and Class Members all have common questions of law and fact arising out of the same common event: the Data Incident discovered by Defendant on or about December 19, 2023. S.A. ¶ 21. Specifically, Plaintiffs alleged numerous questions of law and fact that are common to the class including: whether and to what extent Defendant had a duty to protect the PI of Plaintiffs and Class Members; whether Defendant had a duty not to disclose the PI of Plaintiffs and Class Members to unauthorized third parties; whether Defendant failed to adequately safeguard the PI of Plaintiffs and Class Members; and whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Incident. (ECF 23, ¶ 180). Such common questions are susceptible to common evidence. And any individualized questions are minor compared to the voluminous number of common questions.

## 2. Class action treatment is superior to other methods.

Superiority requires that "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy[.]" *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *14 (quoting Fed. R. Civ. P. 23(b)(3)). For example, in *Robinson*, superiority was satisfied given "the large size of the proposed class . . . judicial economy [would be] achieved through common adjudication" and because "[t]he expense of individual actions, weighed against the potential individual recovery of the vast majority of class members here, would be prohibitive." *Id*. at *16–17.

Superiority is easily met in data breach class actions like this because the "potential damages suffered by individual class members are relatively low-dollar amounts and would be uneconomical to pursue on an individual basis[.]" *Dominion Dental*, 2021 U.S. Dist. LEXIS 252202, at *11; *see also In re Capital One*, 2022 U.S. Dist. LEXIS 234943, at *17 (same);

*Advanced Med. Mgmt., LLC*, 2024 U.S. Dist. LEXIS 112172, at *11–12 (same); *Nat'l Bd. of Exam'rs in Optometry, Inc.*, 2019 U.S. Dist. LEXIS 120558, at *12–13 (same); *Dominion Dental United States*, 2021 U.S. Dist. LEXIS 252202, at *10–11 (same); *In re Novant Health, Inc.*, 2024 U.S. Dist. LEXIS 107949, at *15–16 (same).

Superiority is satisfied here because individual litigation for all Class Members—who have the same claims arising from the same Data Incident—would be highly inefficient and unnecessarily burden judicial resources. Klinger Decl. ¶ 18. Moreover, the proposed Settlement will give the Parties the benefit of finality, as opposed to protracted and individualized litigation. *Id.* ¶¶ 16–17. Thus, superiority is satisfied.

### D. The Settlement is Fair, Reasonable, and Adequate.

Under Rule 23(e), a district court may approve a settlement that is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). However, "at the preliminary approval stage, the Court need only find that the settlement is within 'the range of possible approval.'" *Costco*, 340 F.R.D. at 249 (quoting *Scott v. Family Dollar Stores, Inc.*, No. 3:08-cv-00540-MOC-DSC, 2018 U.S. Dist. LEXIS 41908, at *10 (W.D.N.C. Mar. 14, 2018)). Notably, in *Jiffy Lube*, the Fourth Circuit bifurcated this analysis into (1) a "fairness" inquiry, and (2) an "adequacy" inquiry. *In re Jiffy Lube*, 927 F.2d at 158–59).

### 1. The Settlement is fair.

To assess the "fairness" of a settlement, the Fourth Circuit has provided four relevant factors: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of . . . class action litigation." *Robinson*, 2019 U.S. Dist. LEXIS

26450, at *22 (quoting *In re Jiffy Lube*, 927 F.2d at 159). On balance, these four factors weigh toward the granting of preliminary approval.

**Posture of the Case**. The first factor "concerns the means by which the parties settled the action." *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *23. Notably, a case "settle[d] early in the litigation . . . may nonetheless be deemed fair." *Id*. (quoting *Temp. Servs*., 2012 U.S. Dist. LEXIS 199143, at *27). And even a case settled "very early" and "only months after the filing of the class action complaint" may be approved. *Id*. (citing *Grice v. PNC Mortg. Corp. of Am*., Civil Action No. PJM-97-3084, 1998 U.S. Dist. LEXIS 23875, at *16 (D. Md. Apr. 30, 1998)). Here, Plaintiffs have been litigating this case since February 26, 2024, including filing an amended complaint. Klinger Decl. ¶¶ 5–6; ECF. 23. And the Parties only reached agreement on the materials terms of the settlement on June 6, 2024, after lengthy arms-length negotiations. Klinger Decl. ¶ 8. Thus, this factor weighs toward preliminary approval.

**Extent of Discovery**. The second factor "ensures that all parties 'appreciate the full landscape of their case when agreeing to enter into [the] Settlement.'" *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *25 (quoting *In re Mills Corp. Sec. Litig*., 265 F.R.D. 246, 254 (E.D. Va. 2009)). Thus, in *Robinson*, this factor weighed toward preliminary approval when, *inter alia*, class counsel "conducted a thorough investigation of the claims before initiating this action" and "assessed possible damages[.]" *Id*. at *25–26. Here, "Plaintiffs' Counsel conducted extensive pre-suit discovery to determine: all publicly available details about the cause, scope, and result of the Data Incident, and the damages suffered by the Plaintiffs and the Class." Klinger Decl. ¶ 4. Thus, this factor weighs toward preliminary approval.

**Circumstance of Negotiation**. The third factor deals with if "the proposed settlement is non-collusive and was reached in good faith based on the circumstances of the negotiations[.]"

*Robinson*, 2019 U.S. Dist. LEXIS 26450, at *26–27 (D.S.C. Feb. 14, 2019). Thus, "any concern[s] that counsel colluded in reaching agreement" may be dispelled when "negotiations were 'adversarial' and were conducted at 'arm's length[.]'" *Id.* (quoting *Temp. Servs.*, 2012 U.S. Dist. LEXIS 199143, at *28). Here, the Parties reached agreement on the materials terms of the settlement on approximately June 6, 2024, after lengthy arms-length negotiations. Klinger Decl. ¶ 8. Thereafter, the Parties diligently negotiated and circulated drafts of the Settlement Agreement, along with accompanying notices, a Claim Form, and other exhibits, and agreed upon a Settlement Administrator. *Id.* ¶ 9. Thus, this factor weighs toward preliminary approval.

**Counsel's Experience**. The fourth factor assesses whether the parties "are represented by competent and experienced counsel, which weighs in favor of settlement approval." *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *27–28. Thus, this factor weighs toward preliminary approval when the parties are represented by "highly skilled and experienced" counsel that "carefully investigated and evaluated [the] claims[.]" *Id.* Here, Class Counsel has years of experience representing individuals in complex class actions—specifically in data breach class actions. Klinger Decl. ¶¶ 13, 21. Moreover, "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *27–28 (internal quotation omitted). Here, Class Counsel has attested that "[b]ased upon Counsel's substantial experience, it is our opinion that the proposed settlement warrants the Court's preliminary approval." Klinger Decl. ¶ 13. Thus, this factor weighs toward preliminary approval.

Taken together, all four factors weigh towards preliminary approval—and "fairness" is satisfied. Notably, this aligns with other data breach decisions within the Fourth Circuit. *See e.g., In re Capital One*, 2022 U.S. Dist. LEXIS 234943, at *29–30 (finding fairness satisfied because

"[t]he Settlement provides significant monetary benefits to compensate consumers for out-of-pocket losses and attested time spent dealing with issues related to the alleged data breach and important commitments by [defendant] as to its future data security practices"); *Advanced Med. Mgmt., LLC*, 2024 U.S. Dist. LEXIS 112172, at *13–15 (same); *Nat'l Bd. of Exam'rs in Optometry, Inc.*, 2019 U.S. Dist. LEXIS 120558, at *15–15 (same); *Dominion Dental United States*, 2021 U.S. Dist. LEXIS 252202, at *13 (same); *In re Novant Health, Inc*., 2024 U.S. Dist. LEXIS 107949, at *16–19 (same).

### 2. The Settlement is adequate.

To assess the "adequacy" of a settlement, the Fourth Circuit has provided five relevant factors: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs would likely encounter if the case were to go to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *28-29 (citing *In re Jiffy Lube*, 927 F.2d at 159). On balance, these five factors weigh toward the granting of preliminary approval.

***Strengths, Difficulties, and Defenses***. Given the overlapping nature of the first and second factors, courts address them in one fell swoop. *See e.g., Robinson*, 2019 U.S. Dist. LEXIS 26450, at *29 (considering the "first and second factors" together); *Clark v. Experian Info. Sols., Inc*., No. 8:00-1217-22, 2004 U.S. Dist. LEXIS 28324, at *35 (D.S.C. Jan. 14, 2004) (same); *Monterrosa v. Mi Casita Rests*, No. 5:14-CV-448, 2017 U.S. Dist. LEXIS 239109, at *16 (E.D.N.C. Sep. 22, 2017) (same). Courts consider "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult case." *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *29 (quoting *In re Mills*, 265 F.R.D. at 256).

For example, in *Robinson*, these two factors weighed toward preliminary approval when, *inter alia*, defendant "denie[d] that it committed any wrongdoing . . . and vigorously dispute[d] the claims asserted" and class counsel "recognize[d] the costs and risks of prosecuting this litigation through class certification, summary judgment, trial, and appeal[.]" 2019 U.S. Dist. LEXIS 26450, at *29–30. Likewise, Defendant here denies any wrongdoing and is prepared to vigorously dispute Plaintiffs' claims. S.A. ¶ 111 ("SHLC has denied and continues to deny each of the claims and contentions alleged in the Complaint and in the Related Actions."). Plaintiffs here recognize the risks involved in further litigation. Klinger Decl. ¶¶ 13, 16. Thus, the Class sacrifices very little (if anything at all) given the timely and substantial benefits provided by the settlement and the risks and uncertainties posed by protracted litigation (e.g., dispositive motions, trial, appeal). *Id*. Thus, these two factors weigh towards preliminary approval.

***Expense and Duration***. The third factor considers the "anticipated duration and expense of additional litigation." *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *30–31. In *Robinson*, this factor weighed toward preliminary approval because the case was "a fully contested class action lawsuit [that] would be expected to take significant time to resolve . . . [and] the completion of merits and expert discovery, class certification briefing, dispositive motions, trial, post-trial motions, and possible appeals would entail substantial expenses for all parties." 2019 U.S. Dist. LEXIS 26450, at *30. Here, additional litigation would delay timely relief and result in expensive and protracted litigation (e.g., the costs and delay associated with "prevailing on the merits, proving causation, achieving class certification, maintaining class certification, and surviving appeal"). Klinger Decl. ¶ 16. Thus, this factor weighs toward preliminary approval.

***Solvency of Defendant***. The fourth factor "involves the solvency of Defendant and the likelihood of recovery on a litigated judgment." *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *31.

In *Robinson*, this factor weighed toward preliminary approval when there was "no evidence that Defendant is in danger of becoming insolvent[.]" Likewise, Plaintiffs are unaware of any evidence suggesting that Defendant is in danger of insolvency. Klinger Decl. ¶ 17. Thus, this factor weighs toward preliminary approval.

**Degree of Opposition**. The fifth factor "addresses the degree of opposition to the proposed settlement." *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *31. However, this factor is not strongly implicated at the preliminary approval stage. *See id*. ("Due to the preliminary nature of this motion, the Court is unaware of any opposition to this settlement."). Thus far, Plaintiffs are not aware of any opposition to this settlement. Klinger Decl. ¶ 17. Moreover, as was true in *Robinson*, "[c]lass members will have the opportunity to opt out or object . . . at the final fairness and approval hearing." 2019 U.S. Dist. LEXIS 26450, at *31; *see also supra* § III.F. Thus, this factor weighs toward preliminary approval.

Taken together, all five factors weigh towards preliminary approval—and "adequacy" is satisfied. Notably, this aligns with other data breach decisions within the Fourth Circuit. *See e.g., In re Capital One*, 2022 U.S. Dist. LEXIS 234943, at *29–30 (finding adequacy satisfied because "[t]he Settlement provides significant monetary benefits to compensate consumers for out-of-pocket losses and attested time spent dealing with issues related to the alleged data breach and important commitments by [defendant] as to its future data security practices"); *Advanced Med. Mgmt., LLC*, 2024 U.S. Dist. LEXIS 112172, at *15–19  (same); *Nat'l Bd. of Exam'rs in Optometry, Inc.*, 2019 U.S. Dist. LEXIS 120558, at *15–20 (same); *Dominion Dental United States*, 2021 U.S. Dist. LEXIS 252202, at *13 (same); *In re Novant Health, Inc*., 2024 U.S. Dist. LEXIS 107949, at *19–22 (same).

In sum, the Settlement meets the requirements of Rule 23(a), 23(b)(3), and satisfies the factors provided by the Fourth Circuit in *In re Jiffy Lube*, 927 F.2d at 159. Thus, the Court should grant preliminary approval.

**E.  The Court Should Approve the Proposed Notice Plan.**

The Court should approve the notice plan because it directs "notice in a reasonable manner" as required by Rule 23. Fed. R. Civ. P. 23(e)(1)(B). Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B). Notice may occur by "United States mail, electronic means, or other appropriate means." *Id*. And notice must explain: (i) the action; (ii) how the class is defined; (iii) the class claims, issues, or defenses; (iv) that a class member may appear through an attorney; (v) that the court will exclude from the class any member who requests it; (vi) the time and manner for requesting exclusion; and (vii) the binding effect that class judgment has on members. *Id*. Thus, due process requires that notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

Here, the proposed notice plan satisfied both Rule 23 and due process. *Compare* S.A. ¶ 73 (providing that the Settlement Administrator's duties include "[c]ompleting the Court-approved Notice Program by noticing the Settlement Class by Postcard Notice and, where email addresses are provided by SHLC, sending the Postcard Notice in electronic form via email, sending out Long Form Notices and paper Claim Forms on request from Settlement Class members" and [e]stablishing and maintaining the Settlement Website to provide important information and to

receive electronic Claim Forms" and "[e]stablishing and maintaining an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries, and answer the frequently asked questions of Settlement Class members who call with or otherwise communicate such inquiries") *with Robinson*, 2019 U.S. Dist. LEXIS 26450, at *38 (approving a similarly detailed proposed notice and notice plan), and *In re Aqueous*, 2021 U.S. Dist. LEXIS 16470, at *16–17 (same). Thus, the court should approve the notice plan.

### F. The Court Should Appoint Class Counsel.

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A) (i–iv); *see also Robinson*, 2019 U.S. Dist. LEXIS 26450, at *18 (appointing class counsel when counsel had "conducted substantial work" and had "substantial experience prosecuting and settling [] class actions"). Here, Class Counsel has "years of experience representing individuals in complex class actions (including data breach class actions)" and has already conducted substantial work investigating, prosecuting, and negotiating this case. Klinger Decl. ¶¶ 4–9, 13. Thus, the Court should appoint Gary Klinger and David Lietz of Milberg Coleman Bryson Phillips Grossman PLLC as Class Counsel under Rule 23(g).

### V.  CONCLUSION

Plaintiffs respectfully move this Court for entry of an Order to: (1) preliminarily approve the terms of the Settlement as being within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class for settlement purposes only; (3) approve the Notice

Program set forth herein and approve the form and content of the Notices of the Settlement; (4) approve the Claim Form and Claim submission process; (5) approve the procedures for Settlement Class members to opt-out of the Settlement or for Settlement Class Members to object to the Settlement; (6) appoint Gary Klinger and David Lietz of Milberg Coleman Bryson Phillips Grossman PLLC as Class Counsel for Settlement purposes; (7) appoint Kroll Settlement Administration, LLC as Settlement Administrator; (8) appoint Patricia Burnelle, Miho Sakai, and Judy Kisling as Representatives of the Class; (9) stay the Action pending Final Approval of the Settlement; and (10) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, the Parties, Class Counsel, and SHLC's Counsel.

DATE: October 11, 2024

Respectfully submitted,

By: */s/ Paul J Doolittle*
Paul J Doolittle
Poulin Willey Anastopoulo LLC
32 Ann Street
Charleston, SC 29403
843-834-4712
Email: paul.doolittle@poulinwilley.com

Gary Klinger
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
227 West Monroe Street, Suite 2100
Chicago, Illinois 60606
gklinger@milberg.com

David Lietz
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015
dlietz@milberg.com
*Attorneys for Plaintiffs and Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on October 11, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                    By: *<u>/s/ Paul J Doolittle</u>*
                    Paul J Doolittle
                    Poulin Willey Anastopoulo LLC
                    32 Ann Street
                    Charleston, SC 29403
                    843-834-4712
                    Email: paul.doolittle@poulinwilley.com