UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **PATRICIA BURNELLE, MIHO SAKAI**, and **JUDY KISLING** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**SAGE HOME LOANS CORPORATION** f/k/a **LENOX FINANCIAL MORTGAGE CORPORATION** d/b/a **WESLEND FINANCIAL**,<br><br>Defendant. | Case No. 0:24-cv-00972-MGL |

**DECLARATION OF GARY KLINGER IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

1.      I am counsel for Plaintiffs Patricia Burnelle, Miho Sakai, and Judy Kisling in the above-captioned case. This declaration supports Plaintiffs' motion for Preliminary Approval of Class Action Settlement. I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

**LITIGATION BACKGROUND**

2.      Plaintiffs are victims of the Data Incident experienced by Defendant Sage Home Loans Corporation f/k/a Lenox Financial Mortgage Corporation d/b/a Weslend Financial ("Defendant" or "SHLC").

3.      Before filing this case, Plaintiffs' Counsel conducted extensive pre-suit discovery to determine: all publicly available details about the cause, scope, and result of the Data Incident, and the damages suffered by the Plaintiffs and the Class.

4. On February 26, 2024, Plaintiff Patricia Burnell filed this class action lawsuit against Defendant in this Court and asserted claims for (1) negligence; (2) negligence per se; (3) breach of implied contract; and (4) unjust enrichment.

5. Subsequently, SHLC was named as a defendant in two putative class actions filed in the Central District of California and one in California Superior Court, Orange County (the "Related Actions"). The Related Actions are materially and substantively identical, as they have overlapping claims, seek to represent the same putative class members, and arise out of the same Data Incident.

6. Thereafter, the Parties began discussing the possibility of early resolution of the asserted claims.

7. After lengthy arms-length negotiations, the Parties reached agreement on the materials terms of the settlement on June 6, 2024. Notably, the Parties did not discuss or negotiate fees or service awards until they agreed on the terms benefiting the Class. In so doing, Class Counsel and Plaintiffs avoided conflict with the Class's interests, thereby fulfilling their responsibilities to the Class.

8. In the months that followed, the Parties diligently negotiated and circulated drafts of the Settlement Agreement, along with accompanying notices, a Claim Form, and other exhibits, and agreed upon a Settlement Administrator.

9. The Settlement Agreement was finalized and executed on October 10, 2024.

10. Plaintiffs were impacted the same as all Settlement Class Members; and thus, they all share the same interests.

11. Moreover, Plaintiffs have assisted in the investigation of this case, reviewed and approved pleadings, stayed in contact with Class Counsel, and answered Class Counsel's many

questions. Plaintiffs are informed of the risks of continued litigation and the benefits of early resolution.

## COUNSEL'S RECOMMENDATION

12. Counsel has years of experience representing individuals in complex class actions (including data breach class actions). As such, Counsel's depth of experience informed both Plaintiffs' settlement position, and the needs of Plaintiffs and the proposed Settlement Class. While Plaintiffs believe in the merits of their claims, Plaintiffs are also aware that a successful outcome is uncertain—and would be achieved (if at all) only after prolonged, arduous litigation with the attendant risk of drawn-out appeals and the potential for no recovery at all. Based upon Counsel's substantial experience, it is our opinion that the proposed settlement warrants the Court's preliminary approval.

13. This Settlement provides timely and significant relief to Class Members. And the terms of the Settlement are well within the range of those accepted by courts in similar data breach class action settlements.

14. The parties tailored the terms of the Settlement to address the specific potential harms (including out-of-pocket expenses and lost time) caused by the Data Incident—thereby reimbursing both economic and non-economic losses.

15. This result is particularly favorable given the risks of protracted litigation. Plaintiffs face serious risks of: prevailing on the merits, proving causation, achieving class certification, maintaining class certification, and surviving appeal. Thus, the proposed Settlement will give the Parties the benefit of finality.

16. Not only does this Settlement avoid the risks of protracted litigation, but it also provides benefits to the Class Members *today*—as opposed to the mere possibility of future relief.

Notably, Plaintiffs are unaware of any evidence suggesting that Defendant is in danger of insolvency. And thus far, Plaintiffs are not aware of any opposition to this settlement.

17. The Settlement's benefits unquestionably provide a favorable result to Class Members. As such, the Settlement is well within the range of acceptable outcomes that satisfy the requirements for Preliminary approval. After all, individual litigation for all Class Members—who have the same claims arising from the same Data Incident as Plaintiffs—would be highly inefficient and unnecessarily burden judicial resources.

18. Additionally, the Notice program contemplated by the Settlement provides the best practicable method to reach Class Members. Moreover, this particular Notice program is consistent with the notice programs approved by other courts in similar class actions.

19. Thus, Class Counsel asks the Court to grant preliminary approval of the Settlement Agreement and enter the proposed final/preliminary approval order.

## COUNSEL'S QUALIFICATIONS

**Gary Klinger of Milberg Coleman Bryson Phillips Grossman PLLC**

1. I am a Senior Partner at the international plaintiffs' class action law firm Milberg.[1] Since Milberg's founding in 1965, it has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements.[2] Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the U.S. Supreme Court.[3] The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of

---

[1] A copy of Milberg's firm resume is attached hereto as **Exhibit A**.
[2] *See, e.g., In re Tyco Int'l Ltd., Securities Litig.*, MDL 1335 (D. N.H.) (serving as lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Ins. Co. Sales Practice Litig.*, No. 95-4704 (D. N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.
[3] *See* https://milberg.com/precedent-setting-decisions/page/3/.

corporate and other large-scale wrongdoing. Milberg has more than 100 attorneys and has offices across the U.S. and the European Union.

2.      As a Senior Partner at Milberg, I have extensive experience serving as lead or co-lead counsel in numerous privacy class actions. My privacy practice includes: data breaches, ransomware attacks, unlawful collection and/or disclosure of personal information, and violations of privacy statutes and/or laws, such as the Illinois Biometric Information Privacy Act ("BIPA"), Illinois Genetic Information Privacy Act, California Consumer Privacy Act, California Medical Information Act, Telephone Consumer Protection Act, and General Data Protection Regulation.

3.      I have been recognized publicly as a "trail blazer" in the privacy space. I led the way in bringing privacy class actions arising from the use of tracking technologies such as the "Meta Pixel." I filed the first-ever privacy case in the healthcare setting for unlawful disclosure of private health information (*Quinto v. The Regents of the University of California*, Case No. 22-cv-012970). In the wake of the *Quinto* lawsuit, the Department of Health and Human Services (DHHS) issued a bulletin on the requirements under HIPAA for online tracking technologies providing that "[r]egulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of ePHI to tracking technology vendors or any other violations of the HIPAA Rules." Since my *Quinto* lawsuit, dozens of similar lawsuits have been filed against healthcare providers by plaintiffs' class action firms across the country, numerous investigative articles have been published, and Congress even opened an inquiry into the issue.

4.      I also led the way bringing similar lawsuits in connection with the use of tracking technologies under the Video Privacy Protection Act ("VPPA") (*Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1329; *Belozerov v. Gannett Co.*, 2022 WL 17832185). My work in developing favorable case law paved the way for dozens of similar lawsuits across country.

5. I also represent consumers in class actions and mass arbitration for claims involving false advertising, defective products, consumer fraud, violations of antitrust laws, and other torts.

6. I have been appointed by state and federal courts to act as Class Counsel for millions of consumers and recovered hundreds of millions of dollars for consumers throughout the country. Presently, I am lead or co-lead counsel in more than thirty (30) active class action lawsuits pending in state and federal courts across the country.

7. I was recognized as one of the 2024 Lawdragon 500 Leading Litigators in America. I also was recognized in 2024 by Chambers as one of the leading attorneys in the United States for Privacy and Data Security Litigation.

8. I am a Certified Information Privacy Professional (CIPP/US) and a member of the International Association of Privacy Professionals. I am also presently pursuing my Masters of Laws (LLM) in Data Privacy and Cybersecurity from the University of Southern California Gould School of Law.

9. I have settled on a class-wide basis more than sixty class actions involving privacy violations where I served as lead or co-lead counsel and recovered hundreds of millions of dollars in the process. I am presently litigating more than one hundred class action cases across the country involving privacy violations.

10. For example, in *Parris, et al v. Meta Platforms, Inc.*, Case No. 2023LA000672 (Ill. 18th Jud. Cir. Ct., DuPage Cnty.), I negotiated and won final approval for a $64.25 million settlement on behalf of Illinois Instagram users for biometric privacy claims. This landmark settlement is the third largest biometric privacy settlement in U.S. history.

11. In *Carrera Aguallo v. Kemper Corp.*, Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021), I, as appointed co-lead counsel, obtained final approval of a $17.6 million dollar settlement

to resolve data breach class action claims against Kemper Corporation in a case involving more than six million class members.

12. I also obtained final approval for a class-wide settlement for $11 million for a major privacy class action involving more than four million consumers. *See Heath v. Insurance Techs. Corp.*, No. 21-cv-01444 (N.D. Tex.).

13. I was also appointed Co-Lead Counsel in the privacy case styled, *In re: Herff Jones Data Breach Litigation*, Master File No. 1:21-cv-1329-TWP-DLP (S.D. Ind.), which involves approximately one million class members and settled on a class-wide basis for $4.35 million.

14. I also served as co-lead counsel in the consolidated privacy litigation styled, *In Re: CaptureRx Data Breach Litigation*, No. 5:21-cv-00523-OLG (W.D. Tex.), which involves more than 2.4 million class members and settled on a class-wide basis for $4.75 million.

15. I also currently serve as appointed co-lead counsel to represent more than three million class members in another major privacy class action in the Seventh Circuit. *See In re Arthur J. Gallagher Data Breach Litig.*, No. 1:21-cv-04056 (N.D. Ill.).

16. It is noteworthy that, just in the time since 2020 through the present, I (either individually, or as a member of the law firms in which I have been a partner during that timeframe) have been appointed class counsel in over 100 data breach and/or data privacy cases, including, but not limited to the matters listed in the attached **Exhibit A**.

17. I have successfully litigated privacy class actions through class certification. *In Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. June 25, 2018), where I certified, over objection, a nationwide privacy class action involving more than one million class members.

18. In a recent nationwide privacy class settlement hearing in the U.S. District Court for the Northern District of California, Judge Richard Seeborg personally commended me for having achieved "quite a substantial recovery for class members." Judge Seeborg further stated he could not recall any class action case where "the amounts going to each class member were as substantial" as that obtained by me (and my co-counsel).

19. In addition to concentrating my practice on class action litigation involving consumer, privacy, and product liability matters, I also make substantial efforts to stay apprised of the current law on these issues. In recent years, I have attended various legal training seminars and conferences, such as the dri™ conference for Class Actions, The Consumer Rights Litigation Conference and Class Action Symposium, as well as attending various seminars offered by Strafford on class action issues.

20. I am also a member of the International Association of Privacy Professionals and a Certified Information Privacy Professional (CIPP/US).

21. I graduated from the University of Illinois at Urbana-Champaign in 2007 (B.A. Economics), and from the University of Illinois College of Law in 2010 (J.D., cum laude). While at the U of I College of Law, I was a member of, and ultimately appointed as the Executive Editor for the Illinois Business Law Journal. My published work includes: *The U.S. Financial Crisis: Is Legislative Action the Right Approach?,* Ill. Bus. L. J. (Mar. 2, 2009).

22. I am presently pursuing my Master of Laws (LLM) in Data Privacy and Cybersecurity from the University of Southern California Gould School of Law.

23. I became licensed to practice law in the State of Illinois in 2010 and am a member of the Trial Bar for the Northern District of Illinois, as well as the U.S. Bankruptcy Court for the Northern District of Illinois. Additionally, I am admitted to practice in federal courts across the

country, including, but not limited to, the U.S. District Courts for the District of Colorado, the Central District of Illinois, the Northern District of Illinois, Northern District of Indiana, Southern District of Indiana, Eastern District of Michigan, Eastern District of Texas, and the Eastern District of Wisconsin.

Pursuant to 28 U.S.C. § 1746, I declare and sign under penalty of perjury of the United States of America that the foregoing is true and correct.

Date: October 11, 2024

Respectfully submitted,

*By: /s/ Gary Klinger*
Gary Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
227 West Monroe Street, Suite 2100
Chicago, Illinois 60606
gklinger@milberg.com